UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA


| | |
|---|---|
| Jerod J. Cook, #282755, ) | |
| ) | C/A No.  5:14-1938-RMG-KDW |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Lt. Jordan Williams, ) | Report and Recommendation |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| _____ ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC") proceeding pro se, filed this 42 U.S.C. § 1983 action alleging that Defendant violated his constitutional rights. This matter is before the court on Defendant's Motion for Summary Judgment, ECF No. 41, filed on January 14, 2015. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) the court advised Plaintiff, on January 15, 2015, of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendant's Motion. ECF No. 42. On January 23, 2015, Plaintiff filed a Response in Opposition to Defendant's Motion, ECF No. 46, and on February 2, 2015, Defendant filed a Reply, ECF No. 47. On February 17, 2015, Defendant filed a Motion to Dismiss or Amended Motion to Compel, ECF No. 52. Plaintiff responded to Defendant's Motion on February 25, 2015. ECF No. 55. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because these Motions are dispositive, a Report and Recommendation is entered for the court's review.

I.       Background

Plaintiff, Jerod J. Cook, is an inmate currently housed at the Gilliam Psychiatric Hospital at Kirkland Correctional Institution.[1] ECF No. 1 at 2-3. The facts giving rise to Plaintiff's Complaint occurred on June 13, 2012, while Plaintiff was in his cell in the Special Management Unit ("SMU"). *Id.* at 4. Plaintiff alleges that he and Defendant got into an argument over whether Plaintiff could go to recreation. *Id.* Specifically, Plaintiff maintains that Defendant instructed him to tie his yellow jumpsuit to the bars on his cell door which would let the officers in charge of recreation know that Plaintiff wished to go outside. *Id.* In response to Defendant's instruction, Plaintiff maintains he told Defendant that placing the jumpsuit on the door would be a violation of SMU policies. *Id.* Plaintiff alleges that Defendant then told Plaintiff that he did not care whether or not Plaintiff could go outside, turned, and walked away. *Id.* at 5.

Plaintiff then told Defendant he was acting like a "real ass" and stated that he would notify others, including the Warden, about their conversation. *Id.* Plaintiff alleges that Defendant then returned, opened his cell window, and stated: "I don't care about you sueing (sic) me 'cracker' and you can tell who you want to tell—I—DONT—Care." *Id.*  After additional discussion, Plaintiff alleges:

> Defendant [then] snatched the window open very fast causing [P]laintiff's left pinky finger to drop into the window seal and Defendant Williams sprayed approximately 50 grams of chemical munitions into the facial area of [] Plaintiff, from an estimated range of 6 inch[e]s away. Defendant Williams then slammed the window of the cell quickly trying to get away. [] Plaintiff's finger was jammed in the window and he would not move away from the door.

*Id.* at 6. Thereafter, Plaintiff alleges that he realized his finger was in the shape of an "L," and he screamed for help and received medical attention. *Id.* Further, Plaintiff alleges that x-rays verified he had a broken finger, and he "was placed on Codean (sic) for pain." *Id.*

---

[1] At the time Plaintiff filed his Complaint he was housed at Lieber Correctional Institution.

Plaintiff alleges a cause of action pursuant to section 1983 for excessive force/cruel and unusual punishment in violation of the Eighth Amendment. *Id.* at 8. Plaintiff seeks punitive damages, reasonable attorney's fees, nominal damages, compensatory damages, a jury trial, and costs. *Id.* at 9-10.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Under Rule 41 of the Federal Rules of Civil Procedure, "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order," the court may enter an order of involuntary dismissal. Fed. R. Civ. P. 41(b); *see also Gantt v. Md. Div. of Corr.,* 894 F. Supp. 226, 228-29 (D. Md. 1995) (citing *Link v. Wabash R. Co.,* 370 U.S. 626 (1962); *White v. Raymark Indust., Inc.,* 783 F.2d 1175 (4th Cir. 1986); *Zaczek v. Fauquier Cnty., Va.,* 764 F. Supp. 1071, 1074 (E.D. Va. 1991)) ("[F]ederal courts possess the inherent authority to dismiss cases with prejudice *sua sponte.*"). In assessing whether dismissal is appropriate under Rule 41(b), a court evaluates (1) the degree of the plaintiff's personal responsibility for the failures; (2) the prejudice caused to the defendant; (3) whether the plaintiff has a history of deliberately proceeding in a dilatory fashion; and (4) the availability of a less drastic sanction. *Chandler Leasing Corp. v. Lopez,* 669 F.2d 919, 920 (4th Cir. 1982) (per curiam); *see also Ballard v. Carlson,* 882 F.2d 93, 95 (4th Cir. 1989) (holding the magistrate judge's prior explicit warning that a recommendation of dismissal would result if the plaintiff failed to obey the judge's order was proper grounds for the district court to dismiss the suit when the plaintiff did not comply despite the warning).

Although a pro se litigant is not held to the same high standards as an attorney, *see Hughes v. Rowe,* 449 U.S. 5, 10 n. 7 (1980) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520,

(1972), pro se litigants must meet certain standards, including "respect for court orders without which effective judicial administration would be impossible." *Ballard,* 882 F.2d at 96; *see also Dancy v. Univ. of N.C. at Charlotte,* 2009 WL 2424039, at *2 (W.D.N.C. Aug. 3, 2009) ("Although *pro se* litigants are given liberal treatment by courts, even *pro se* litigants are expected to comply with time requirements and other procedural rules without which effective judicial administration would be impossible.") (internal citations omitted); *Pack v. S.C. Wildlife & Marine Res. Dep't,* 92 F.R.D. 22, 25 (D.S.C. 1981) ("A pro se litigant . . . must meet certain standards. Among these are a good faith attempt to comply with the rules of discovery and to be present for trial.") (internal citations omitted). Accordingly, pro se litigants are also subject to the provisions of Rule 41.

III.    Analysis

A.  Defendant's Summary Judgment Motion

1.  Excessive Force Claim

Defendant argues that Plaintiff's allegations could not rise to the level of a constitutional violation because Defendant did not act with the intent to harm. ECF No. 41-1 at 5. Defendant relies on unanswered Requests to Admit in support of this argument. *Id.* at 6. In his Response, Plaintiff maintains that "no directives where (sic) given to [] Plaintiff at all." ECF No. 46 at 2. Further, Plaintiff maintains that he was "not causing a disturbance, cursing, kicking the cell door- but [spoke] rationally. . . ." *Id.* at 3. In Reply, Defendant argues that based on his default admissions, Plaintiff is barred from denying that he "kick[ed] on his door, use[d] profanity, cause[d] a disturbance or display[ed] disruptive behavior." ECF No. 47 at 1. Additionally, Defendant maintains that "Plaintiff's admissions are conclusive proof that he engaged in

disruptive behavior by repeatedly kicking the door and using profanity towards Defendant, and that he failed to follow Defendant's multiple directives to cease his behavior." *Id.* at 2.

### a. Effect of Unanswered Requests to Admit

On October 31, 2014, Defendant served Plaintiff with his first set of Requests to Admit. *See* ECF No. 41-2 at 5. In the first request to Plaintiff, Defendant asks that Plaintiff: "Admit that during the incident that occurred at your cell door on the morning of June 13, 2012 at approximately 9:55 am, you became angry, upset, repeatedly kicked the door of your cell, and used profanity towards [Defendant]." *Id.* at 3. In the second request, Defendant asks that Plaintiff: "Admit that during the incident that took place at your cell door on the morning of June 13, 2012 at approximately 9:55 am, you refused to obey multiple verbal directives from [Defendant] to cease your disruptive behavior." *Id.*

Defendant correctly asserts that Plaintiff's failure to answer Defendant's Requests to Admit deems them admitted. *See* Rule 36(a)(3), Fed. R. Civ. P. ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court."); *Charleston Bank Consortium v. Nat'l Union Fire Ins. Co.,* No. 07-3856, 2009 WL 4157603 at *3-5 (D.S.C. Nov. 23, 2009) (finding party did not respond to Requests to Admit within the 30–day time period required by Rule 36, and, therefore, the requests were deemed to have been admitted). However, under Rule 36(b) the court may, on motion, "permit[ ] the admission to be withdrawn or amended." *See also Nat'l Specialty Ins. Co. v. AIG Domestic Claims, Inc.*, No. 6:10-CV-00826-JMC, 2011 WL 1630948, at *2 (D.S.C. Apr. 29, 2011).

Defendant contends that Plaintiff is barred from maintaining that he did not kick on his door, use profanity, cause a disturbance, or display disruptive behavior because "he has already admitted that he engaged in this behavior." ECF No. 47 at 1-2. Further, Defendant argues that "Plaintiff's admissions are conclusive proof that he engaged in disruptive behavior by repeatedly kicking the door and using profanity towards Defendant, and that he failed to follow Defendant's multiple directives to cease his behavior." *Id.* at 2. Finally, Defendant maintains that "Rule 36 admissions, even default admissions, will support the grant of summary judgment and cannot be overcome by other evidence." *Id.* Based on Plaintiff's Complaint and his other submissions to the court, the undersigned disagrees.

Rule 36(b) instructs that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." However, "[a] formal written motion to withdraw is not necessary. A request to withdraw may be made orally or may be imputed from a party's action. Courts have found that even a late response to requests for admission is equivalent to a withdrawal of a deemed admission." *Nat'l Specialty Ins. Co.*, 2011 WL 1630948, at *2 citing 7 *Moore's Federal Practice* § 36.13 (Matthew Bender 3d ed.) (citing *Quasius v. Schwan Food Co.,* 596 F.3d 947, 952 (8th Cir. 2010)). The South Carolina District Court in *National Specialty* further found that "where the untimely filing of responses to requests to admit contains answers similar to denials contained in the same defendant's answer, those untimely responses may be deemed the 'functional equivalent of a motion to withdraw admissions made under Rule 36(b).'" *Id.* (citing *Quasius,* 596 F.3d at 951 (citing *Warren v. Int'l Bhd. of Teamsters,* 544 F.2d 344, 339–40 (8th Cir. 1976))).

In his Complaint, Plaintiff maintains that he "was never given a charge for creating and inciting a disturbance or use of profanity. . . ." ECF No. 1 at 7. Additionally, in his Step 2

Grievance, which Plaintiff attached as an exhibit to his Complaint, Plaintiff maintains that he was gassed by Defendant who "did not give any directive to me but opened my window—by himself and did what he did and called me a cracker." ECF No. 1-1 at 4. In his Response to Defendant's Motion, Plaintiff maintains that despite being exasperated, "he did not kick on the door[, ] use profanity or display disruptive behavior." ECF No. 46 at 1. Therein, Plaintiff restates that he was not charged with creating a disturbance, refusing to obey a directive or use of profanity, and that Defendant never "file[d] a proper incident report so the Plaintiff could be charged and the incident put on record." *Id.* at 1-2. Further, Plaintiff maintains that "[n]o directives [were] given to [] Plaintiff at all." *Id.* at 2. Finally, Plaintiff contends that he "was not causing a disturbance, cursing, kicking the cell door—but speaking rationally. . . ." *Id.* at 3. Based on Plaintiff's allegations in his Complaint, its attachments, and assertions made in his Response to Defendant's Motion, the undersigned finds that Plaintiff has made an imputed request to withdraw admissions. *See Nat'l Specialty*, 2011 WL 1630948, at *2 (finding a party had made the functional equivalent of a motion to withdraw partly based on denials contained in the same defendant's answer and late responses to requests to admit). Defendant correctly asserts that in a Request to Staff, Plaintiff admitted to using profanity after Defendant cursed at him and called him a "cracker" during the June 13, 2012 incident. *See* ECF No. 41-5 at 6. However, contrary to Defendant's assertion, whether Plaintiff kicked the door of his cell and failed to follow directives is not conclusively established and is still a question of fact based on Plaintiff's withdrawn admissions.[2]

---

[2] The court notes that in a Motion for an Extension Plaintiff maintains that he "has been moved from a psychiatric hospital to a mental health program and moved again to another location." ECF No. 51 at 1. There, he maintains that "Property Control took all of [his] belongings to inventory his personal items. Also taking his legal materials. Including paper and pen." *Id.*

### b. Constitutional Excessive Force Violation

Defendant argues that based on Plaintiff's admissions that he refused to obey multiple directives from Defendant to cease his disruptive behavior, Defendant's actions were justified in the interests of maintaining order and discipline. ECF No. 41-1 at 6. Furthermore, Defendant maintains that Plaintiff's disruptive behavior posed a threat to safety and order. *Id.*

The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components.

For the subjective component, Plaintiff must prove that Defendant assaulted and restrained him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Id.* at 321.

---

Plaintiff maintains that once his property was returned, he discovered that materials were missing, including copies of discovery requests from Defendant. *Id.*

Considering the first and second *Whitley* factors, the undersigned finds Plaintiff has presented sufficient evidence to demonstrate that there was no need to apply force and that Defendant used an unreasonable amount of force which was not for the purpose of restoring order. Other than his own statements contained in his Complaint and exhibits, Plaintiff attached documents from three purported witnesses to the June incident between Plaintiff and Defendant. ECF Nos. 1-1 at 8-15. In a "Request to Staff Member," Inmate Griffin indicates that he overheard Plaintiff and Defendant's conversation and specifically heard Defendant say "F_ _k you cracker!" to Plaintiff. *Id.* at 8, Next Inmate Griffin maintains that he heard Defendant open Plaintiff's window flap and deliver several bursts of pepper spray but did not "hear[ Plaintiff] threaten [Defendant]." *Id.* Additionally, Inmate Griffin claims he heard Plaintiff coughing and choking as a result of the pepper spray. *Id.* In an affidavit Plaintiff attached to his Complaint, Inmate David Bacchus attests that he heard Defendant approach Plaintiff's door and say "he wasn't hearing that cracker talk and then I heard him spray gas (chemical munitions) into [Plaintiff's] cell [and] slam the food flap." *Id.* at 9-10. In another affidavit Plaintiff attached to his Complaint, Inmate William Taylor attests that he witnessed Defendant "slam" Plaintiff's hand into the door flap after Defendant called Plaintiff a "cracker." *Id.* at 11. Further, Inmate Williams maintains that Defendant sprayed Plaintiff with gas for "no reason." *Id.* Based on the evidence Plaintiff presented with his Complaint, the court finds that whether there was sufficient need for application of force under prong one of *Whitley* based on Plaintiff's actions remains a question of fact. Furthermore, the undersigned finds that whether an unreasonable amount of force was used based on the circumstances of the situation under the second prong of *Whitley* also remains a question of fact.

Turning to the extent of Plaintiff's injuries under the third prong of *Whitley*, the evidence before the court supports Plaintiff's contention that he suffered a broken pinky finger and effects from being gassed. *See* ECF No. 1-1 at 6-7. Medical encounter 645 indicates that Plaintiff had a one-inch laceration to his left fifth digit and redness around his chest and torso. *Id.* at 6. Medical encounter 657 indicates Plaintiff's finger was likely fractured. *Id.* at 7. However, though Plaintiff mainly suffered a finger injury only, the extent of an injury is not outcome determinative. *See Hudson v. McMillian*, 503 U.S. 1, 7, (1992) ("The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). Finally, the undersigned examines the fourth prong of *Whitley*, the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them. The Fourth Circuit has held that a prison official may use reasonable force to compel obedience or to subdue recalcitrant prisoners. *See Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984); *see also Hill v. Crum*, 727 F.3d 312, 328 n.3 (4th Cir. 2013) (noting there is a distinction "between instances where force is applied to restore order and instances where it is applied without justification."). However, as stated above, whether Plaintiff disobeyed orders or was disruptive remains a question of fact.

The undersigned finds there are several disputed facts in the record concerning the interaction between Plaintiff and Defendant. Therefore, a genuine issue of material fact exists concerning whether Plaintiff's Eighth Amendment rights were violated, and the undersigned recommends Defendant's Motion for Summary Judgment be denied on Plaintiff's excessive force claim.

2.  Qualified Immunity

Defendant asserts that he is entitled to qualified immunity on Plaintiff's claims. ECF No. 41 at 11. Defendant further maintains that Plaintiff has failed to show that Defendant violated any clearly established rights but performed the discretionary functions of his official duties in an objectively reasonable fashion. *Id.*

The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982). When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that Defendant performed the discretionary functions of his respective official duties. However, as previously addressed, the undersigned finds that

whether Defendant performed those functions in an objectively reasonable fashion remains a question of fact, and Plaintiff's constitutional rights were clearly established when Defendant acted. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendant be denied qualified immunity.

### B. Amendment of Defendant's Motion

Within his Summary Judgment Motion, Defendant argues that he should be allowed to amend his Motion pending the court's decision on his Motion to Compel. ECF No. 41-1 at 11-12. Defendant argues that Plaintiff's failure to respond to his discovery requests has hindered his ability to defend this action. *Id.* The undersigned will address the current status of discovery and whether Defendant can file an amended Motion for Summary Judgment in the following section.

### C. Defendant's Motion to Dismiss or Amended Motion to Compel

#### 1. Dismissal of Plaintiff's Action as Sanction

Defendant argues that Plaintiff's action should be dismissed based on his refusal to comply with a court's order and because Defendant maintains that Plaintiff has committed fraud upon the court. ECF No. 52 at 3-5. Defendant argues that Plaintiff failed to follow the court's January 14, 2015 order that directed Plaintiff to provide the court and Defendant with an update on service of his discovery responses. *Id.* Plaintiff did not provide the court with an update on discovery responses in spite of its January 14, 2015 order. However, Plaintiff served Defendant with responses to discovery the same day the court entered its order. *See* ECF No. 52 at 2.

When determining whether to dismiss an action, the court should consider the following four factors: "(1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused the defendant, (3) the existence of a drawn out history of deliberately proceeding in a dilatory fashion, and (4) the existence of a sanction less drastic than dismissal."

*Chandler Leasing Corp. v. Lopez*, 669 F.2d at 920 (internal citation omitted). Despite his pro se status, Plaintiff is entirely responsible for responding to Defendant's discovery responses under the Federal Rules of Civil Procedure. However, the undersigned finds that Plaintiff has responded to Defendant's discovery requests. Further, the court notes that Plaintiff is currently confined in a psychiatric hospital. Here, concerning the second factor, Defendant will not be prejudiced by Plaintiff's late discovery responses because the court recommends that Defendant be allowed an opportunity to refile dispositive motions if Plaintiff provides additional discovery responses, and Defendant can show cause for the refiling. Furthermore, under the third factor, the court notes that this is the only motion to compel filed in this action, and there is no history of dilatory behavior. Finally, due to Plaintiff's indigent status, the court cannot consider monetary damages as a sanction. However, the undersigned gave the parties time to cure any outstanding discovery and has recommended allowing Defendant to refile necessary motions. Accordingly, dismissal of Plaintiff's action is a drastic remedy that the undersigned does not recommend at this time. *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978) (internal citations omitted) ("A dismissal with prejudice is a harsh sanction which should not be invoked lightly in view of 'the sound public policy of deciding cases on their merits.'").

### 2. Order on "Outstanding" Discovery

Defendant argues, alternatively, that Defendant is entitled to an order compelling Plaintiff to fully and completely respond to his discovery requests because Plaintiff either failed to respond or served incomplete responses.

Previously, Plaintiff represented that he had sent Defendant "all copies of all paperwork." ECF No. 55 at 3. Additionally, Plaintiff maintained that he was still waiting on "other materials for discovery," and would send Defendant "a copy as fast as [he] can." *See id.* The court

requested that the parties provide the court with an update on outstanding discovery issues by March 18, 2015. ECF No. 61. In Response, Plaintiff filed responses to Defendant's discovery along with a letter to the court, *see* ECF No. 64 (docketed as a Motion for extension of time to complete discovery).[3] Apparently, Plaintiff mistakenly omitted page two of his answers to interrogatories from these responses. *See* ECF No. 64-1 at 3-4. In his status report, Defendant acknowledged that Plaintiff responded to his discovery requests and supplemented responses. ECF No. 65 at 2. Though Defendant noted that page two of Plaintiff's answers to interrogatories was missing, Defendant indicated that "it appears that Plaintiff has in good faith responded to the clarifications Defendant requested in his March 6 letter." *Id.*

Based on the parties' representations to the court, Defendant's Motion for an order on outstanding discovery is *denied as moot*. Plaintiff is instructed to send Defendant page two of his answers to interrogatories, and all parties are instructed to supplement their discovery responses in accordance with the Federal Rules of Civil Procedure.

---

[3] In his Motion, Plaintiff asks the court to not "hold the Request for Admission over [his] head." ECF No. 64 at 1. For various reasons, Defendant opposes Plaintiff's request. *See* ECF No. 67. Specifically, Defendant maintains that Plaintiff "has offered no rational excuse for his failure to timely respond to Defendant's Requests to Admit, and allowing Plaintiff to file late responses will prejudice Defendant because Defendant has justifiably relied upon Plaintiff's admissions." *Id.* at 1. For the reasons included in this Report and Recommendation, *see supra* section (A)(1)(a), the undersigned recommends finding that Plaintiff's admissions be withdrawn pursuant to Rule 36(b) of the Federal Rules of Civil Procedure. Accordingly, Defendant's Opposition, ECF No. 67, is noted and denied.  Furthermore, based on the recommendations herein, Plaintiff's request to extend the discovery deadline, ECF No. 64, is granted in part. The court will extend the discovery deadline only for remaining outstanding discovery.

IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant's Motion for Summary Judgment, ECF No. 41, and Defendant's Motion to Dismiss or Amended Motion to Compel Plaintiff's Responses to Defendant's discovery, ECF No. 52, *be denied*, and Defendant be allowed to file another dispositive motion.


IT IS SO RECOMMENDED.


April 17, 2015                                Kaymani D. West
Florence, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**